UNITED STATES, Appellee,

v.

Staff Sergeant Jimmy R. KENNEDY,
378–60–1010, United States
Army, Appellant.

CM 444694.

U.S. Army Court of Military Review.

13 Feb. 1986.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Lieutenant Colonel Paul J. Luedtke, JAGC, Major Lawrence F. Klar, JAGC, Captain L. Sue Hayn, JAGC, Captain Barry Rothman, JAGC, Captain Paul E. Conrad, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Thomas J. Benjamin, JAGC, Captain John J. Park, Jr., JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was tried on 5 July 1983 by a military judge sitting as a general court-martial. Consistent with his pleas, he was convicted of two specifications of wrongful possession and distribution of hashish and one specification of wrongful possession of hashish with intent to distribute, violations of Article 134, Uniform Code of Military

Justice, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. Pursuant to a pretrial agreement, the convening authority, Major General Thurman E. Anderson, suspended for twenty-four months the confinement at hard labor in excess of twenty-four months, with provision for automatic remission. Otherwise, he approved the sentence as adjudged.

## I

Appellant now contends, *inter alia,* that General Anderson was disqualified to refer his case to trial, that he was deprived of favorable character witnesses, and that General Anderson was disqualified to take action in his case. The resolution of these matters is controlled by our decision in *United States v. Cruz,* 20 M.J. 873 (A.C.M.R.1985) (en banc) and other relevant precedents.

■ Appellant's case involves essentially the same supporting evidence that was before us in *United States v. Anderson,* 21 M.J. 670 (A.C.M.R.1985) and *United States v. Scott,* 20 M.J. 1012 (A.C.M.R.1985).[1] For the reasons stated in *United States v. Treakle,* 18 M.J. 646, 654–655 (A.C.M.R. 1984), *pet. granted,* 20 M.J. 131 (C.M.A. 1985), we are pursuaded that General Anderson was not disqualified to refer appellant's case to trial.[2]

At trial, after stating the general nature of the charges, the trial counsel announced that he was unaware of any procedural irregularities or unlawful command influence in the case. A few moments later, just prior to entry of appellant's plea, the trial defense counsel submitted Defense Exhibits A through E "primarily for the military judge to consider on sentencing." These exhibits include the now infamous "Haga letter,"[3] other correspondence associated with the distribution of that letter, and subsequent letters which were sent out to clarify or retract the "Haga letter". General Anderson's letter of retraction was also included.[4] Appellant affirmed that he had reviewed these letters and knew what they referred to. The following exchange then took place between the military judge and the trial defense counsel:

MJ: Captain A ..., in your capacity as defense counsel and officer of the court, have you been able to make an independent evaluation of whether these particular letters had any effect in this case?

DC: Your Honor, at this time I have not been able to detect any effect on this trial—on Sergeant Kennedy's ability to secure witnesses on his own behalf. As I indicated from the defense perspective, at this time I have not been able to detect how this letter has affected this individual trial.

MJ: In other words, you haven't been able to find any effect?

DC: No, Your Honor, that's correct.

Appellant has subsequently submitted the following post-trial affidavit to this court:

It was before 6 July 1983 [*i.e.,* on or before the day of trial] when I had given my lawyer a list of names (SSG Price, SSG Reece, 1SG Davis) to speak to on my behalf. At a later date, I believe it was on 4 July 1983, my lawyer came to see me at my unit (C Btry, 3 Bn, 61 ADA) to talk to me about my court-martial and he

1. Although the affidavit of Major Michael A. Buchanan has not been filed in this case, we take judicial notice of that affidavit, filed with us in *United States v. Scott, supra. See United States v. Surry,* 6 M.J. 800 (A.C.M.R.1978), *pet. denied,* 7 M.J. 62 (C.M.A.1979).

2. Appellant has not argued that his pleas of guilty were affected by General Anderson's actions. Our examination of the record convinces

us that the validity of appellant's pleas of guilty was unaffected.

3. Letter, Headquarters, 3d Armored division, 25 January 1983, Subject: NCOPP Letter # 16–Personal Conduct and Integrity.

4. Letter, Headquarters, 3d Armored Division, 4 March 1983, Subject: Testifying in Behalf of an Accused Soldier.

showed me some 3rd Armor[ed] Division [p]olicy [l]etters. My [l]awyer said that the people I had named would not speak on my behalf as it may cause them problems within the unit. This statement is to the best of my knowledge.

■ In order for an appellant to neutralize the presumption that his court-martial proceedings were correct and regular, he must "produce sufficient evidence of an error affecting the validity of the findings or sentence in his case to shift the burden of persuasion to the government." *Cruz*, 20 M.J. at 885. Where, as in this case, the alleged error is unlawful command influence, the evidence must be sufficient, "considering the totality of the circumstances, ... to allow a reasonable person to conclude that actual unlawful command influence affected appellant's case." *Id.* at 886. Where, as in this case, the alleged error is deprivation of witnesses through unlawful command influence,

> credible evidence that a person who had some particular knowledge relevant to [appellant's] case reasonably understood that [a commander] had told him not to testify would, unless rebutted by the government, trigger a presumption that the witness had complied with the commander's order. *United States v. Treakle*, 18 M.J. at 657. This, coupled with a showing that the evidence in question was relevant to some material aspect of appellant's case and that its absence caused substantial harm, would shift the burden of persuasion to the government....
>
> ....

In the case at bar, appellant has failed to provide us with even that evidence which is most readily available to him.

He has failed to produce statements from ... the people to whom he would normally have gone in search of favorable testimony, stating how they interpreted the events in question, if they were affected, and if so how.

*Id.* at 887–88.

■ What has been missing from most 3d Armored Division cases, such as *United States v. Anderson, supra,* is evidence of the identities of defense witnesses *in that appellant's case* who were in a position to give testimony that could reasonably have affected the case, but who believed that they were under command pressure not to testify.[5] In the case at bar, appellant's affidavit contains such information. He has furnished the names of three potential witnesses. Fairly read, his affidavit asserts that these witnesses would have given favorable character testimony for appellant but that they refused to testify out of fear based on their understanding that General Anderson took a dim view of such testimony. Under the circumstances of the case at bar, favorable testimony from these witnesses would have been substantial evidence that could reasonably have affected the sentence. If appellant's affidavit and the generalized evidence concerning events in the 3d Armored Division were considered alone, they would be sufficient to raise the issue of deprivation of witnesses through unlawful command influence in appellant's case.[6]

However, there is more evidence before us on that issue, and we must "consider[ ] the totality of the circumstances" in determining whether the issue is raised. *Cruz*, 20 M.J. at 886.

As we have noted, the question of unlawful command influence on witnesses was

---

**5.** The witness's perception of command pressure can, of course, be addressed by circumstantial as well as direct evidence. *See, e.g., Anderson,* 21 M.J. at 674–75; *United States v. Treakle,* 18 M.J. 646, 650–652 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985). The presumption that potential witnesses who understood General Anderson to be discouraging favorable character evidence complied with that perceived directive is also available to assist an

appellant in raising the issue. *See Anderson,* 21 M.J. at 675; *Treakle,* 18 M.J. at 657.

**6.** Whether such deprivation resulted in prejudice to appellant would depend in part on whether the trial defense counsel would have called such witnesses, thereby risking the effects of opening the door for rebuttal. We have no indication in this case that he would have done so.

addressed at trial, where appellant's defense counsel assured the military judge that he had been unable to discern any loss of witnesses attributable to the Haga or Anderson correspondence. We further note that appellant's trial defense counsel had been present at the 14 March 1983 questioning of General Anderson concerning the statements the latter had made in his command lectures. This fact and the contents of Defense Exhibits A through E demonstrate that the trial defense counsel was well aware of the command influence problem in the 3d Armored Division. Under these circumstances it is inconceivable that, if a potential witness had said that he would not testify because of possible repercussions, the defense counsel would have failed to bring that fact to the attention of the trial judge. We find that the defense counsel's representations at trial conclusively refute the assertions in appellant's post-trial affidavit.[7] Thus we not only find that appellant has failed to raise the issue of deprivation of witnesses through unlawful command influence, but also that appellant was in fact deprived of no witnesses because of unlawful command influence. See United States v. Richardson, 21 M.J. 693 (A.C.M.R.1985).[8] Finally, we find no appearance of unlawful command influence in the case at bar.

## II

Specification 1 of the Charge alleges that appellant "did ... wrongfully possess and thereafter distribute" the hashish involved in that offense. As in United States v.

Blais, 20 M.J. 781 (A.C.M.R.1985), we hold that corrective action is appropriate.

The finding of guilty of the words, "possess and thereafter" contained in Specification 1 of the Charge is set aside. The record of trial is returned to The Judge Advocate General for transmission to a different convening authority for action in accordance with our decision in United States v. Scott, supra.

NAUGHTON, Judge, concurring:

I concur with Senior Judge Wold's disposition of the multiplicity issue set forth in Part II. With respect to Part I, I note that although I may disagree with some of the holdings in United States v. Cruz and United States v. Treakle,[1] I agree that Senior Judge Wold has correctly articulated those holdings and correctly applied them to the case at bar.

FELDER, Judge, concurring in part and dissenting in part:

In this case the essential question that must be resolved to determine if the issue of unlawful command influence has been raised is whether the truth lies in the assertions of the trial defense counsel or appellant. At the time of trial, the defense counsel was fully aware of the problem of improper command influence in the 3d Armored Division. He interjected the subject into the trial proceedings as a mitigating factor by introducing into evidence the offending command policy letters that ad-

---

7. Appellant's affidavit also impliedly asserts the claim that the trial defense counsel was ineffective. See United States v. Sadler, 16 M.J. 982 (A.C.M.R.1983). Our finding that appellant's affidavit has been refuted also resolves that issue.

8. Cf. United States v. Muller, 21 M.J. 205, 207 (C.M.A.1986) ("Because the military judge properly inquired and received assurances from appellant that no sub rosa agreements existed, we will not consider inconsistent post-trial assertions.") Obviously, we have considered appellant's inconsistent post-trial assertions in this case. That is because we are dealing with different issues than the one before the Court of Military Appeals in Muller; because post-trial affidavits have traditionally been accepted on

the issues before us; and because we need not decide in this case whether Muller bars all inconsistent post-trial affidavits or only those offered in cases like Muller. Nevertheless, we believe that the quoted holding in Muller, at the very least, stands for the principle that all post-trial assertions which are inconsistent with a party's statements at trial are of doubtful credibility.

1. See United States v. Cruz, 20 M.J. 873, 894 (A.C.M.R.1985) (en banc) (Naughton, J., dissenting) and United States v. Treakle, 18 M.J. 646, 661 (A.C.M.R.1984) (en banc) (Naughton, J., concurring), pet. granted, 20 M.J. 131 (C.M.A. 1985).

dress the matter of witnesses testifying at courts-martial. Appellant assured the presiding judge that he had reviewed the letters; likewise, the defense attorney assured the judge that this case was unaffected by impermissible command involvement.

Although no witnesses testified for (or against) appellant, I agree with Senior Judge Wold that it is unimaginable that the defense counsel would misrepresent a vital fact to the court in the presence of his client, if only two days earlier he had informed his client that three witnesses had refused to testify because of command pressure.

I am convinced of the defense counsel's credibility and effectiveness. After the trial, he submitted a petition for clemency to the convening authority even though the latter had agreed to reduce the sentence. Further, the defense counsel prepared a lengthy response to the post-trial review that consisted of nearly six and a half single-spaced typewritten pages and sixteen inclosures. In this response, he vehemently challenged the qualification of the convening authority to perform the initial review function. Certainly, he would have similarly attacked the convening authority in the courtroom had he impermissibly abridged the right of appellant to present witnesses.

Moreover, appellant has filed numerous statements from persons assigned to the 3d Armored Division to support his claim of unlawful command influence. Conspicuous by their absence are statements from any of the three potential defense witnesses who allegedly were pressured not to testify for appellant.[1]

Therefore, I concur with the majority that the evidence does not raise the issue of either actual or apparent unlawful command influence. I also believe, as they do, that the record of trial should be returned to The Judge Advocate General for action

in accordance with *United States v. Scott*, 20 M.J. 1012 (A.C.M.R.1985).

I disagree with the decision that it was improper for the trial court to find appellant guilty of wrongful possession and distribution of hashish as alleged in Specification 1 of the Charge. *United States v. Blais*, 20 M.J. 781, 783 (A.C.M.R.1985) (Felder, J., concurring in part and dissenting in part).

---

**1.** If such statements are available, appellant may submit them to this court in connection with a request for reconsideration. *See* Rule 20,

CMR Rules of Practice and Procedure. *United States v. Cruz,* 20 M.J. 873, 891 n. 25 (A.C.M.R. 1985) (en banc).